**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THOMAS BROWN and GERALDINE BROWN, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>BANKERS LIFE AND CASUALTY COMPANY, a foreign corporation,<br><br>    Defendant. | No. CV-09-1459-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff's[1] Motion to Remand to Pinal County Superior Court ("Superior Court"). (Dkt. # 10.)

Plaintiff initially filed this insurance bad faith case in Superior Court on June 15, 2009. (Dkt. # 2 Ex. A.) On July 14, 2009, Defendants gave notice of removal to federal court, alleging original jurisdiction based on diversity of citizenship and an amount in controversy exceeding $75,000. (Dkt. ## 1–2.) Plaintiff now seeks remand to Superior Court, contending this Court lacks jurisdiction because the amount in controversy does not exceed $75,000. For the following reasons, the Court grants Plaintiff's motion.[2]

---

[1] Plaintiff Geraldine Brown died during the pendency of this action. (Dkt. # 17.) Plaintiff Thomas Brown, Geraldine's husband, remains a party.

[2] Defendant's request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the

## BACKGROUND

The Complaint alleges Mr. and Ms. Brown (collectively, "the Browns") purchased a home health care policy ("Policy") from Defendant in 2007. (Dkt. # 2 Ex. A at 5.) The Policy promised to provide long-term care benefits for a chronically-ill family member up to a monthly maximum of $3,720 and a lifetime maximum of $131,400. (*Id.*) In August 2008, Ms. Brown became terminally ill, and the Browns began using "Home Instead" services to provide home health care to Ms. Brown, expecting Defendant to pay for these services. (*Id.* at 5–6.) The Browns used Home Instead services during January, February, and March of 2009, and Home Instead billed Defendant in excess of $3,000 for these services. (*Id.* at 6)

Defendant, however, refused to pay for these services. On February 17, 2009, Defendant informed the Browns that Policy coverage had ended on December 30, 2008. (*Id.* at 6.) Sometime closely thereafter, Defendant reinstated the Policy, but still refused to pay for the Home Instead services rendered in January, February, and March of 2009. (*Id.* at 7–10).

The Complaint's prayer for relief did not seek a specific dollar amount, but instead sought (1) "[c]ompensatory damages for unpaid benefits, and loss of use of benefits . . ., together with interest," (2) "[c]ompensatory damages for personal injuries, mental and emotional distress and anxiety and other incidental damages," (3) "[p]unitive and exemplary damages in an amount appropriate to punish and to deter," (4) "attorneys fees," (5) "costs of suit," and (6) "such other and further relief as to the Court seems just and proper." (*Id.* at 12.)

Along with its Complaint, Plaintiff filed an Arizona Rule of Civil Procedure 68 Offer of Judgment, proposing judgment for $70,000. (*Id.* at 13–14.)

On July 14, 2009, Defendant filed a notice of removal to this Court under 28 U.S.C. 1441(a). (Dkt. ## 1–2.) Defendants contend this Court has jurisdiction because the parties

---

Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

are citizens of different states and the amount in controversy exceeds $75,000. Plaintiff contests only the amount in controversy.

**DISCUSSION**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Only . . . actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). There is a "strong presumption" against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)). One way a district court may have removal jurisdiction is if the plaintiff and defendant are citizens of different states and the "matter in controversy exceeds . . . $75,000, exclusive of interest and costs." *See* 28 U.S.C. § 1332(a). The burden of proof regarding the amount in controversy depends on whether the face of the plaintiff's complaint alleges a specific amount or whether the complaint is ambiguous. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402, 404 (9th Cir. 1996).

**I. The Face of Plaintiff's Complaint Does Not Allege a Specific Amount in Controversy of More Than $75,000.**

In proving the amount in controversy, "when a complaint filed in state court alleges on its face an amount [exceeding $75,000], such requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount. *Guglielmino*, 506 F.3d at 699 (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996)).

Defendant's Memorandum in Support of Notice of Removal contends the Complaint facially alleges an amount exceeding $75,000 because the Policy's lifetime maximum is $131,400. (Dkt. # 2 Ex. C at 4.) Plaintiff's Complaint, however, does not seek the Policy's *outer limit*, but instead seeks the *unpaid benefits* for services rendered in January, February, and March of 2009. (Dkt. # 2 Ex. A at 6–7, 12.) These total only approximately $3,000, as billed by Home Instead to Defendant in early 2009. (*Id.* at 6). The Complaint seeks only these early-2009 unpaid benefits because the Defendant reinstated the Policy coverage shortly thereafter. (*Id.* at 7). In fact, the damages owed cannot possibly grow beyond the amount already alleged because the Browns stopped using in-home care before June of 2009 and because Ms. Brown, who had received the care, recently passed away.[3] (*Id.* at 9; Dkt. # 17.)

## II. Defendant Has Not Shown the Amount in Controversy More Likely Than Not Exceeds $75,000.

Because Plaintiff's Complaint is "unclear or ambiguous" regarding the amount in controversy, *Guglielmino*, 506 F.3d at 699, Defendant "bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [$75,000]." *Sanchez*, 102 F.3d at 404 ("[T]he defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]."); *see also Gaus*, 980 F.2d at 566-67 ("If it is *unclear* what amount of damages the plaintiff has sought, . . . then the defendant bears the burden of actually proving the facts to support . . . the jurisdictional amount."). "[R]emoval 'cannot be based simply upon conclusory allegations'

---

[3] Defendant cites several out-of-circuit cases, none of which is apposite. In *Harrison v. Ace American Insurance Company*, 2009 U.S. Dist. LEXIS 50806 (M.D. Ala. June 15, 2009), the amount in controversy exceeded $75,000 when the plaintiff "made a claim . . . for the policy *limits* of $2,000,000" (emphasis added). Moreover, both *Waller v. Professional Insurance Corporation*, 296 F.2d 545 (5th Cir. 1961), and *Pries v. New England Life Insurance Company*, 2007 U.S. Dist. LEXIS 63845 (W.D. La. Aug. 28, 2007), found the requisite amount in controversy when plaintiffs sought to bind the defendants to *full* insurance policies. In this case, however, Plaintiff does not seek the policy limit, but instead seeks only the amount of past unpaid benefits.

where the [complaint] is silent" as to the dollar amount sought. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

### A.  Unpaid Benefits

The unpaid insurance benefits Plaintiff seeks do not alone meet the amount-in-controversy requirement. As discussed above, contrary to Defendant's assertions, nothing in Plaintiff's Complaint suggests it seeks either the $131,400 Policy limit or even the $3,720 monthly maximum. Plaintiff seeks only the approximately $3,000 of unpaid benefits from in-home care in early 2009. (Dkt. # 2 Ex. A at 6, 12.)

### B.  Personal Injury, Emotional Distress, Punitive Damages, and Attorneys' Fees

Defendant contends Plaintiff's other theories of relief establish the amount-in-controversy requirement. The Court disagrees. In determining the amount in controversy, courts may consider damages for physical injury and emotional distress, punitive damages, and attorneys' fees. *See Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (considering emotional distress awards in similar cases); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("[P]unitive damages are part of the amount in controversy . . . ."); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorized an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). However, these damages and fees must not leave substantial doubt and must be more than speculative to meet Defendant's burden of proving the amount in controversy. *See Sanchez*, 102 F.3d at 404; *Singer*, 116 F.3d at 377.

Here, Defendant presents inadequate evidence to show the amount in controversy exceeds $75,000. While Plaintiff's prayer for relief for personal injuries, emotional distress, punitive damages, and attorneys' fees are relevant to determining the amount in controversy, Defendant must offer more than conclusory allegations or speculation.

Defendant contends emotional distress and punitive damage awards would exceed $75,000 because several other insurance cases authorized large awards. While courts

1  sometime analyze comparable awards, see, for example, *Ansley v. Metro. Life Ins. Co.*, 215
2  F.R.D. 575 (D. Ariz. 2003), Defendant must "articulate why the *particular facts* that are
3  alleged in the instant action might warrant extraordinary" damages. *See Haisch v. Allstate*
4  *Ins. Co.*, 942 F. Supp. 1245, 1249 (D. Ariz. 1996) (emphasis added) ("It would be inherently
5  speculative . . . to conclude that the amount in controversy requirement can be met simply
6  by asserting that large punitive damages have been awarded in the past against insurance
7  companies . . . ."). Here, Defendant fails to show any specific reasons emotional distress or
8  punitive damages would be large in *this* case. None of Defendant's comparison cases dealt
9  with home health-care insurance, and Defendant does not explain how three months of
10 unpaid policy benefits totaling approximately $3,000 would spring into over $75,000.

11 Defendant also offers an Affidavit of Counsel explaining how past insurance bad faith
12 cases have resulted in attorneys' fees exceeding $75,000. Similar to punitive damage and
13 emotional distress comparisons, however, Defendant fails to articulate particular facts
14 showing why attorneys' fees would be large in *this* case. *Compare Haisch*, 942 F. Supp. at
15 1249 (discussing punitive damages). Showing specific reasons attorneys' fees would be large
16 seems especially important given Plaintiff's unpaid Policy benefits are only around $3,000.

17 Defendant relies on *Ansley*, which found the amount in controversy satisfied when the
18 plaintiff alleged more than a year of unpaid long-term disability benefits and when the
19 defendant compared other large punitive damage awards and attorneys' fees. 215 F.R.D. 575
20 (D. Ariz. 2003). *Ansley*, however, dealt with over one year of unpaid long-term disability
21 benefits totaling more than $50,000, whereas this case deals with three months of unpaid in-
22 home care benefits totaling around $3,000. Plaintiff in this case also filed, and Defendant
23 declined, a $70,000 offer of judgment, further suggesting the parties perceive a lower amount
24 in controversy.

25 The present case compares more closely with *Matheson v. Progressive Specialty*
26 *Insurance Company*, 319 F.3d 1089 (9th Cir. 2003). In *Matheson*, an insurance company
27 failed to pay insured's claim for loss of a truck for two months. *Id.* at 1091. The truck's
28 market value was only $15,516, and the court found the short-term deprivation would not

justify economic, emotional distress, and punitive damage claims totaling over $75,000. *Id.* In this case, economic damage is alleged to be only approximately $3,000, and Defendant failed to pay benefits for only three months. Without more facts, Defendant cannot show how the amount in controversy is nearly twenty-five times more than the economic damages sought.

### C. Offer of Judgment

While an offer of judgment is not dispositive, it may be "relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (discussing settlement offers). For example, the court in *Ritthaler v. IDS Property Casualty Insurance Company* considered the defendant rejection of the plaintiff's $68,000 offer of judgment in holding the amount in controversy did not exceed $75,000. 2007 U.S. Dist LEXIS 58323 (D. Ariz. July 20, 2007) at *3. Here, Plaintiff filed a $70,000 Offer of Judgment with its Complaint, suggesting Plaintiff believed the amount in controversy was less than $75,000. (Dkt. # 2 Ex. A). More importantly, Defendant rejected Plaintiff's Offer of Judgment, implying Defendant also believed it could resolve the case for less than $70,000. (Dkt. # 14 at 7.)

### CONCLUSION

Removal to federal court was improper because Defendant has not shown by a preponderance of the evidence the amount in controversy exceeds $75,000 to establish jurisdiction. As such, remand to Pinal County Superior Court is appropriate.

**IT IS THEREFORE ORDERED:** Plaintiff's Motion to Remand (Dkt. # 10) is **GRANTED**. The Clerk is directed to remand this case to the Pinal County Superior Court.

DATED this 4th day of September, 2009.

*G. Murray Snow*
G. Murray Snow
United States District Judge